No. 20-10013

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

_____

|  |  |  |
|---|---|---|
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | USDC No. CR-18-76-LJO |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JOSEPH VASQUEZ, | ) | |
| | ) | |
| Defendant-Appellant.) | | |

_____)

Appeal from the United States District Court
for the Eastern District of California
Honorable Lawrence J. O'Neill, Judge Presiding

**APPELLANT'S OPENING BRIEF**

VERNA WEFALD
Calif. State Bar No. 127104

65 North Raymond Avenue # 320
Pasadena, California 91103
Telephone: (626) 577-2658
Facsimile: (626) 685-2562
Email: verna@vernawefald.com

Attorney for Appellant Vasquez
By Appointment of the Court of
Appeals

# TABLE OF CONTENTS

ISSUE PRESENTED FOR REVIEW. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

A.  Nature of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    1.  Basis for Subject Matter Jurisdiction in the District Court. . . . . . . . 2

    2.  Basis for Jurisdiction in the Court of Appeals . . . . . . . . . . . . . . . . 2

    3.  The Judgment is Appealable . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    4.  The Notice of Appeal Was Timely Filed. . . . . . . . . . . . . . . . . . . . . 3

    5.  Bail Status . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

B.  Proceedings and Disposition in the District Court . . . . . . . . . . . 3

C.  Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    1.  The Offense. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    2.  The PSR . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    3.  Defense Sentencing Memorandum . . . . . . . . . . . . . . . . . . . . . . 8

    4.  Sentencing Hearing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

JOSEPH VASQUEZ'S 300 MONTHS SENTENCE IS
SUBSTANTIVELY UNREASONABLE. . . . . . . . . . . . . . . . . . . . . . . 15

    A.  Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

B.      The Section 3553 Factors . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

C.      The court abused its discretion by not treating  sentencing as an individualized assessment . . . . . . . . . . . . . . . . . . . . . 20

D.      The 320 months sentence reflects unwarranted disparity with Sheena Taylor . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

E.      The 320 months sentence is substantively unreasonable . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

CERTIFICATE OF RELATED CASES . . . . . . . . . . . . . . . . . . . . . . . . . 28

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

# TABLE OF AUTHORITIES

## CASES

*Gall v. United States,* 522 U.S. 38 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17, 18

*Kimbrough v. United States,* 552 U.S. 85 . . . . . . . . . . . . . . . . . . . . . . . . 19, 23, 26

*Koons v. United States,* 518 U.S. 81 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Pepper v. United States,* 562 U.S. 476 (2011) . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21

*United States v. Amezcua-Vasquez,* 567 F.3d 1050 (9th Cir. 2009) . . . . . . . . . . . 16

*United States v. Booker,* 543 U.S. 220 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

*United States v. Carty,* 520 F.3d 984 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . 17

*United States v. Fernandez,* 436 F. Supp.2d 983 (E.D. Wisc. 2006) . . . . . . . . . . 23

*United States v. Hinkson,* 585 F.3d 1247 (9th Cir. 2009) . . . . . . . . . . . . . . . . . . 17

*United States v. Hoults,* 240 F.3d 647 (7th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . 22

*United States v. Hunter,* 101 F.3d 82 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . 7

*United States v. Moreland,* 568 F. Supp.2d 674 (S.D. Western Va. 2008) . . . . . . 23

*United States v. Newhouse,* 919 F. Supp.2d 955 (N.D. Iowa 2013) . . . . . . . . . . . 23

*United States v. Patzer,* 548 F. Supp.2d 612 (N.D. Ill. 2008) . . . . . . . . . . . . . . . 23

*United States v. Pruitt,* 502 F.3d 1154 (10th Cir. 2007) . . . . . . . . . . . . . . . . . . . 25

*United States v. Ressam,* 679 F.3d 1069 (9th Cir. 2012) . . . . . . . . . . . . . . . . . 17, 18

*United States v. Rodriguez-Gamboa,* 972 F.3d 1148

(9th Cir. August 27, 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*United States v. Whigham,* 754 F. Supp.2d 239 (D. Mass. 2010) . . . . . . . . . . . . 23

*Williams v. New York,* 337 U.S. 241 (1949) . . . . . . . . . . . . . . . . . . . . . . . . . . 21

## STATUTES AND OTHER

18 U.S.C. § 924(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

18 U.S.C. § 3231. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

18 U.S.C. § 3553(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 21

18 U.S.C. § 3553(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 21, 26

18 U.S.C. § 3553(a)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

21 U.S.C. §§ 846. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 4

21 U.S.C. § 841. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 4

28 U.S.C. § 1291. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

28 U.S.C. § 1294(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

28 U.S.C. § 3742. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

GUIDELINE § 4B1.1(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

U.S. Sentencing Comm'n, Fifteen Years of Guidelines Sentencing,
An Assessment of How Well the Federal Criminal Justice System is
Achieving the Goals of Sentencing Reform 134 (2004). . . . . . . . . . . . . 25

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| ) | USCA. No. 20-10013 |
| UNITED STATES OF AMERICA, ) | |
| ) | USDC. No. CR-18-76-NONE |
| Plaintiff-Appellee, ) | |
| ) | |
| v. ) | |
| ) | |
| JOSEPH VASQUEZ, ) | |
| ) | |
| Defendant-Appellant ) | |
| ) | |

## **APPELLANT'S OPENING BRIEF**

## **ISSUES PRESENTED FOR REVIEW**

Whether Vasquez's 320 months sentence for drug trafficking, in light of his undisputed rehabilitation while on pretrial release, is substantively unreasonable?

1

## STATEMENT OF THE CASE

### A.  Nature of the Case

#### 1.  Basis for Subject Matter Jurisdiction in the District Court

This is an appeal from the methamphetamine trafficking convictions in violation of 18 U.S.C. §§ 846 and 841 after a jury trial and resulting 320 months sentence imposed by the Honorable Lawrence J. O'Neill in the Eastern District of California.  The district court originally had jurisdiction under 18 U.S.C. § 3231.

#### 2.  Basis for Jurisdiction in the Court of Appeals

This Court has jurisdiction over appeals from final judgments under 28 U.S.C. § 1294(1).

#### 3.  The Judgment is Appealable.

A conviction in a federal criminal case is a final order subject to appeal under 28 U.S.C. § 1291.  A sentence is a final order subject to appeal under 28 U.S.C. § 3742.

### 4. The Notice of Appeal was Timely Filed.

The judgment was entered on January 7, 2020. (CR 243, ER-4.)[1] The notice of appeal was timely filed on January 15, 2020. (CR 244, ER-3.) Rule 4(b)(1) Fed. Rules of App. Proc.

### 5. Bail Status.

Mr. Vasquez is serving the 320 months sentence imposed under the judgment. His projected release date is June 7, 2042. (See www.bop.gov: Reg. No. 77319-097.) A motion for compassionate release and/or a recommendation for home confinement was denied on December 29, 2020. (CR 322.)

## B. Proceedings and Disposition in the District Court

On October 25, 2019, a superseding indictment[2] was filed in the United States District Court for the Eastern District of California, charging defendant-appellant Joseph Vasquez with five counts related

---

[1] "CR" stands for Clerk's Record. "ER" stands for Excerpts of Record. "RT" stands for Reporter's Transcripts. "PSR" stands for Presentence Report.

[2] The original indictment also charged codefendants Alecia Trapps, Jimmy Brantley, Carmen Conejo, Ernest Westley, and Sheena Taylor. (CR 1.) All of the codefendants pled guilty. (CR 135, 151, 166, 167, 218.)

to the trafficking of methamphetamine. Count one charged conspiracy to distribute methamphetamine, in violation of 21 U.S.C. §§ 846, 841(a)(1). (CR 187, ER-38-41.) Count two charged distribution of methamphetamine in violation of §§ 841(a)(1) and (b)(1)(A)(viii). (ER-39.) Counts three, four, and five charged distribution in violation of §§ 841(a)(1) and (b)(1)(B)(viii). (ER-39-40.)

On October 3, 2019, after a jury trial, Vasquez was convicted as charged. (CR 205.) As to counts one and two, the jury found 500 grams or more of methamphetamine. (10/3/19 RT 516-517.) As to counts three, four, and five, the jury found 50 grams or more of methamphetamine. (10/3/19 RT 517-519.) Vasquez, who had been on bond pretrial, was remanded when the verdict came in. (10/3/19 RT 523.)

On January 6, 2020, Vasquez was sentenced to 320 months in prison. (CR 243, ER-5.)

## C. Statement of Facts

### 1. The Offense

The FBI investigated codefendant Alecia Trapps, who was bringing methamphetamine from Modesto, California to Juneau,

4

Alaska. (10/1/19 RT 92-93.) Wiretaps led agents to Ernest Westley which in turn led them to Vasquez. The FBI intercepted packages of methamphetamine on October 14, 2017 (count two) October 22, 2017 (count three), November 2, 2017 (count four), and December 28, 2017 (count five).

Wiretaps of calls between Westley and Vasquez on November 17, 2017 (Gov. Exhs. 400, 401) and December 26 and 27, 2017 (Gov. Exhs. 500, 501) were introduced.

When Vasquez' residence was searched, agents found a marijuana grow operation (both plants and processed marijuana), digital scales, and cash. (10/2/19 RT 283-311.)

Ernest Westley testified against Vasquez. Westley said he got methamphetamine from Vasquez to ship to Trapps. (10/2/19 RT 327.)

## 2. The PSR

Due to the drug quantity, the PSR calculated the base offense level as 34. (PSR ¶ 21.) It increased the level to 37 after finding that Vasquez was a career offender under Guideline § 4B1.1(a) and (b)(1). (Addendum at 1-5.) (PSR ¶ 27.)

5

The PSR said that the two qualifying convictions for career offender were possession of controlled substance for sale, Stanislaus County Superior Court, Docket Numbers 123080 and 1415992. (PSR ¶ 27.)

The PSR[3] calculated the criminal history as category IV for having 9 points. However, because of the career offender status, the category was increased to VI. (PSR ¶ 41-43.)

As for Docket No. 123080, the PSR does not list the California Health and Safety ("HS") Code section. Vasquez was sentenced to 36 months probation and 180 days jail. (PSR § 37.)

As for Docket No. 1415992, the PSR does not list the HS section either. He was sentenced to 2 years in jail. (PSR ¶ 40.) The PSR reports that Vasquez was also convicted of possession of controlled substance for sale in Docket N.o. 1405072 but does not list the HS section. (PSR ¶ 39.) The PSR states that 8 months jail time was suspended c/s to Docket No. 1415992 on February 2, 201. The sentence

---

[3] The PSR and all attachments have been submitted to this Court under seal. (CR 239.)

was converted to 970 days work program (non-custodial sentence) on June 4, 2012.  (PSR ¶ 39.)

Because defense counsel filed an objection to the PSR and attached minute orders for Docket Nos. 1405072 and 1415992, it appears that the charge of conviction for both cases was HS 11378.[4] (Sealed CR 239-1 at 4-9.)  There does not appear to be any document attached to the PSR (Sealed CR 239) that states what HS code section Docket No. 123080 was.[5]

The guidelines for level 37, category VI, are 360 months to life.  (PSR at 5.) The PSR recommended a below guidelines sentence of 320 months after finding that Vasquez' "pre-sentence rehabilitation

---

[4]  This Court recently held that HS 11378 qualifies as a generic federal offense.  *United States v. Rodriguez-Gamboa*, 972 F.3d 1148 (9th Cir. August 27, 2020).  A petition for writ of certiorari in that case is due no later than January 24, 2021.  (Supreme Court Order of March 19, 2020).  Should any such petition be granted, Vasquez reserves the right to file supplemental briefing.

[5]  According to the online docket for Stanislaus County Superior Court No. 123080, Vasquez pled no contest to HS 11370.1(a) (possession of controlled substance while armed with loaded firearm).  The federal equivalent statute, 18 U.S.C. § 924(c) is broader than HS 11370.1 because it does not require that the firearm be loaded.  *United States v. Hunter*, 101 F.3d 82,  85 (9th Cir. 1996).

was noteworthy and deserving of consideration of a variant sentence.  A

sentence of 320 months was believed to provide sufficient punishment

for this offense." (PSR at 25.)

> The defendant's pre-sentence rehabilitation is noteworthy and deserving of consideration for a variant sentence.  The probation officer was particularly swayed by the character reference letters prepared by the defendant's counselor and social worker.  Since age 12, the defendant has been abusing drugs, which appears to have been the catalyst for his involvement in the criminal justice system.  He is classified as a career offender, which has resulted in a greater offense level and criminal history category and him facing 30 years imprisonment.  On the other hand, there is no indication he has been afforded the opportunity to participate in substance abuse treatment in the past, he has never been sentenced to state prison or served more than two years in custody.  He has three young children, the younger two whose lives in which he has been actively involved and the older with whom he is striving to establish a relationship.  After a few setbacks, he successfully completed the BCCP, substance abuse treatment, individual counseling, and parenting classes.  Sadly, it took him so long to recognize the need to get his life together.  Hopefully, he will make good use of the recovery tools he has gained and is sincere regarding his motivation to make positive changes in his life to become  a productive member of society.

(PSR ¶ 96.)

### 3.    Defense Sentencing Memorandum

Defense counsel requested that the court not impose the

career offender guidelines.  (CR 240, ER-16.)   Vasquez' prior drug

convictions were in 2007 and 2010.  He did not receive substantial punishment for either.  (ER-16.)

A career offender sentence would also result in unwarranted disparity.  The codefendants who had already been sentenced received substantially less time: Roberto Arellano, 70 months; Jimmy Brantley, 120 months; Carmen Conejo, 60 months; Sheena Taylor, 150 months; and Ernest Westley, 32 months.  The main actor in the conspiracy, Alecia Trapps, had not yet been sentenced.[6]  (ER-14-15.)[7]

Vasquez had made a wholehearted effort to turn his life around while on pretrial release.  He had long suffered from substance abuse but completed drug and alcohol counseling programs while on bond: Better Choices Court Program and Nirvana Drug and Alcohol Treatment Program.  (ER-16; PSR, CR 239-5 at 3-6.)

---

[6] Trapps is scheduled to be sentenced on January 29, 2021.  (CR 303.)

[7] According to the order denying Sheena Taylor's motion for compassionate release, she has four prior drug convictions since 2005, and her parole was revoked at least twice.  While on pretrial release she had three positive drug tests for marijuana and one for cocaine. (CR 300, ER-48-49.)

Rev. Dale Hartman, Counselor and MRT Group leader, Federal Probation, Eastern District, wrote that he had seen "remarkable change in Joseph and his desire and attitude to change and become someone who wants to lead a productive lifestyle free from his past." (ER-22.) He completed several programs, regained custody of his children (who were taken when he was arrested), and has shown "that he is willing to do whatever it takes to be a success. He has done all that I have asked and more." (ER-22; PSR, CR 239-5 at 1.)

Leslie Lewis, MSW Social Worker, Child & Family Services, wrote that Vasquez completed substance abuse treatment. He voluntarily completed parenting classes and individual and court ordered counseling. "I observed substantial positive behavioral changes in Mr. Vasquez." Due to all of his efforts, "I was able to recommend returning custody of his children," which was granted. (ER-24; PSR, CR 239-5 at 2.)

Larinda Medlin, of the Family Maintenance and Reunification Program wrote that Vasquez had completed three child labs and was very motivated to improve the quality of life for himself and his family. (ER-25-26.)

Darlene Guzman of Robertson Road Preschool wrote that Vasquez was very much involved in his daughter Audrina's schooling. She did well in school and Vasquez was "very kind and respectful to staff and children in our program."  (ER-28.)

Neighbors and family members also wrote in support of leniency.  (ER-29-35.)

### 4.    Sentencing Hearing

After noting the PSR recommendation of a 320 months sentence, the court said that this was Vasquez's "fourth drug trafficking, which is, frankly, extraordinary." (ER-21.)  The court did acknowledge that it had received contact from Magistrate Judge Grosjean, "who went into rather extensive detail about how well he had done, actually, in her court." (ER-21.)

Defense counsel argued that Vasquez was responsible for approximately 90 ounces of four transactions which was minimal compared with codefendant Trapps who had not yet been sentenced. "There was never any evidence that Mr. Vasquez had any idea of the scope" or "ongoing nature" of this conspiracy.  (ER-22-23)

11

Hernandez had guns at his place and 38 pounds of methamphetamine in a storage locker; Arellano had cards with him of the patron saints of the Mexican drug cartel. "These are heavy hitters in the drug trade." (ER-24.) By contrast, when Vasquez' home was searched there was no methamphetamine, only marijuana. (ER-24.)

As for Vasquez rehabilitative efforts, "he jumped into rehab with both feet." (ER-24.) Trapps "couldn't hack it on pretrial services program and ended up back incarcerated." (ER-24.)

When counsel pointed out that Vasquez did have multiple convictions but had never gone to prison for them, the court said: "Well, that's a failure of the state system." (ER-25.)

Defense counsel asked the court to sentence Vasquez without the career offender guidelines. This would "recognize his rehabilitative efforts, but still be very substantial jail time." (ER-25.)[8]

The court said it understood the rehabilitative issues which were "important," but disagreed that it could find him not to be a career

---

[8] The guidelines for level 34, category IV, are 210-262 months.

criminal just "because he has decided to get serious about his

rehabilitative efforts." (ER-25.)

> And he continues to the same thing over and over again. He
> basically spits into the face of the system. He continues to
> be a drug dealer, and this is the fourth time. ¶ I mean, he's
> not learning, and the system and the community is paying a
> huge price for his lack of being a responsible, honorable, and
> law abiding citizen.

(ER-25-26.)

> Vasquez addressed the court:

> Your Honor, as sad as it is, as I am to be here, getting
> arrested in this case probably saved my life.

> First of all, I'd like to thank the Court for granting me
> prerelease trial [sic]. During that time, I got to do a lot, you
> know. My grandpa's dying days, I got to be by his bed and
> helping him, aiding him. I also got a lot of self-help when I
> was out.

> You know, I was – I had the opportunity I never had the
> chance before. I wish I would have known about these
> programs before. I never – I never been offered a program.
> This is the first time I did any groups like AA, NA. I did
> outpatient, inpatient. I mean, all these counseling services
> that I never – I never had to have the opportunity to get
> before.

(ER-26-27.)

> Vasquez got a lot of help with his addiction in the past year

and a half with these programs. He had "never really been sober for

my kids." (ER-27.) "I wish I made better choices for myself, my

children. They deserve better of me. ¶ You know, I was selfish. I was

lost in my addiction." (ER-27.)

> Perhaps it was:

> too late for second chances. I have to accept the fact that
> I'm here and never will be allowed to be there for them if
> they need me .... ¶ I have had a lot of transition in my life
> the last year and a half. You know, I understand it's
> probably too late to – to reap the benefits of those changes.
> And you know, all I can do right now is follow the right path.
> And hopefully, you now, my children forgive me for leaving
> them.

(ER-27.)

> The court had never gotten adjusted to liking sentencing

because it affects everyone from victims to families. It disagreed that

drug crimes are victimless crimes. "But the law does give me

obligations and duties when I take my oath to follow the law and to use

my discretion in a reasonable fashion." (ER-28.)

> In speaking with Judge Grosjean, who had you in her
> courtroom many times on the rehab issues, in that court, she
> was passionate about how – how much you tried and how
> well you had done. And what it did was it added to my
> sorrow for you, for your family members, for your friends,
> how much this hurts, how deep it goes.

But on the other hand, I don't just – I don't have the luxury of just saying, Okay, I'm going to now look –I'm going to get my microscope out, and I'm only going to look at you. I have an obligation to be much broader than that and look at all of the damage this has done. And that's my function."

(ER-29.)

The prosecutor said that the two people who supplied Alecia Trapps with drugs were Sheena Taylor and Vasquez. (ER-30.) She asked that the PSR recommendation of 320 months be followed. (ER-29.)

The court said it was taking into account "the level of involvement in a very major drug transaction and organization," the "prior drug trafficking convictions," and "what appears to be a genuine attempt at reconciling his drug addiction." (ER-34.) The court imposed a sentence of 320 months as the PSR recommended, on all counts to run concurrently, to be followed by 60 months of supervised release. (ER-35.)

**Argument**

**JOSEPH VASQUEZ'S 300 MONTHS SENTENCE IS
SUBSTANTIVELY UNREASONABLE**

**A.    Standard of Review:**   "[A]ppellate review of sentencing decisions is limited to determining whether they are reasonable" under the abuse of discretion standard. *Gall v. United States*, 522 U.S. 38, 46 (2007).   In determining the substantive reasonableness of a sentence this Court considers the "totality of circumstances" and attaches no presumption of reasonableness to a sentence that falls within the applicable guidelines ranges. *United States v. Amezcua-Vasquez*, 567 F.3d 1050, 1055 (9th Cir. 2009) (citations).

A guidelines sentence will "usually be reasonable" as the "individual judge who imposes a sentence within the range recommended by the Guidelines thus makes a decision that is fully consistent with the Commission's judgment in general." *Rita v. United States* 551 U.S. 338, 350-351 (2007).

"Appellate courts must review all sentences, within and without the guidelines range, under a deferential abuse of discretion

standard." *United States v. Carty*, 520 F.3d 984, 988 (9th Cir. 2008) (en banc) citing *Gall*, 522 U.S. at 46. When a sentence is appealed, "we first consider whether the district court committed significant procedural error, then we consider the substantive reasonableness of the sentence. *Carty*, 520 F.3d at 993. "The district court abuses its discretion when it makes an error of law, when it rests its decision on clearly erroneous findings of fact, or when we are left with a definite and firm conviction that the district court committed a clear error of judgment." *United States v. Ressam*, 679 F.3d 1069, 1085, (9th Cir. 2012) citing *United States v. Hinkson*, 585 F.3d 1247, 1260 (9th Cir. 2009) (en banc). *Hinkson* adopted a two part test to define what is required to support a conclusion that there was an abuse of discretion:

> That test 'requires us first to consider whether the district court identified the correct legal standard for decision of the issue before it. Second, the test then requires us to determine whether the district court's findings of fact, and its application of those findings of fact to the correct legal standard, were illogical, implausible, or without support in inferences that may be drawn from facts in the record.

*Ressam* at 1085, citing *Hinkson* at 1251.

17

"The abuse of discretion standard is deferential, but it does not mean anything goes." *Ressam*, 679 F.3d at 1087. "Appellate review for substantive reasonableness should not be a 'rubber stamp.'" *Ibid* (citations). Thus, the mere fact that "the district court said it considered the facts set forth in 18 U.S.C. § 3553(a) and provided some explanation of its reasoning" does not mean that the sentence should be affirmed. "*Gall* explicitly confirmed the responsibility of the court of appeals to review not only the process by which the sentence was imposed but also the substance of the sentence." *Ibid.* While the court "will provide relief only in rare cases" "such appellate review necessarily turns on the particulars of each case." *Id.* at 1088.

## B.   The Section 3553 Factors

Now that the guidelines are only advisory, *United States v. Booker*, 543 U.S. 220 (2005), the district court is required to choose a sentence that is "sufficient, but not greater than necessary, to comply with" 18 U.S.C. § 3553(a)(2). Those factors are:

(A)    to reflect the seriousness of the offense, to promote

respect for the law, and to provide just punishment for

the offense;

(B)    to afford adequate deterrence to criminal conduct;

(C)    to protect the public from further crimes of the

defendant; and

(D)    to provide the defendant with needed educational or

vocational training, medical care, or other correctional

treatment in the most effective manner.

(Addendum at 9.)

Under § 3553(a)(6) the court must also consider "the need to

avoid unwarranted sentence disparities among defendants with similar

records who have been found guilty of similar conduct." (Addendum at 10.)

The "advisory Guidelines combined with appellate review for

reasonableness and ongoing revision of the Guidelines in response to

sentencing practices will help to "avoid excessive sentencing

disparities." *Kimbrough v. United States*, 552 U.S. 85, 107, citing

*Booker*, 543 U.S. at 264.

**C.** **The court abused its discretion by not treating sentencing as an individualized assessment**

Even though the court took into consideration Vasquez's genuine attempts at rehabilitation, the below guidelines sentence was a mere 40 months lower than the career offender guidelines. The court said it could not "get my microscope out" and "look only at you" but was obliged to look at the "broader" picture and "all of the damage this has done." (ER-29.) The court did not acknowledge that sentencing is first and foremost an individualized assessment and a defendant's rehabilitation is paramount. Moreover, the base offense level of the guidelines already takes into account the "broader" picture of "how much damage" drug trafficking has done.

In *Pepper v. United States*, 562 U.S. 476, 481 (2011), the Supreme Court held:

> when a defendant's sentence has been set aside on appeal, a district court at resentencing may consider evidence of the defendant's post-sentencing rehabilitation and that such evidence may, in appropriate cases, support a downward variance from the now-advisory Federal Sentencing Guidelines range.

20

"Federal judicial tradition" guides the courts "to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and punishment to ensue." *Pepper*, 562 U.S. at 487, citing *Koons v. United States*, 518 U.S. 81 (1996). Sentencing judges "exercise a wide discretion" and "highly relevant – if not essential – to the selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics." *Williams v. New York*, 337 U.S. 241, 246-247 (1949). "The punishment should fit the offender and not merely the crime." *Id.* at 247.

"Postsentencing rehabilitation may also critically inform a sentencing judge's overarching duty under § 3553(a) to 'impose a sentence sufficient, but not greater than necessary' to comply with the sentencing purposes of § 3553(a)(2)." *Pepper*, 562 U.S. at 491. "Postsentencing conduct also sheds light on the likelihood that [a defendant] will engage in future criminal conduct." *Id.* at 492.

21

In this case, the PSR recognized that Vasquez's drug addiction since age 12 was the "catalyst for his involvement in the criminal justice system." (PSR ¶ 96.)  It is undisputed that he proved pretrial that he was genuine about rehabilitating himself.   He not only made monumental efforts to get his drug addiction under control but he did not reoffend.  After being remanded upon the jury verdict, he did not incur any violations while in custody.  (PSR ¶ 3.)

## D. The 320 months sentence reflects unwarranted disparity with Sheena Taylor

The record does not reflect what offer was made to Vasquez, if any, to plead guilty.  However, according to the government, codefendant Sheena Taylor was one of the major suppliers of drugs to codefendant Trapps.  Taylor had four prior drug convictions, and apparently went to state prison, unlike Vasquez, since her parole was revoked twice.  And, in contrast to Vasquez, she did not do well on pretrial release as she tested dirty for drugs four times.  (ER-48-49.)

"The consequences of being deemed a career offender for purposes of section 4B1.1 of the U.S. Sentencing Guidelines are grave." *United States v. Hoults*, 240 F.3d 647, 648 (7th Cir. 2001).  Applying the

22

career offender guidelines in Vasquez's case has resulted in an "excessive sentencing disparit[y]'" with Taylor who was sentenced to only 150 months. *Kimbrough*, 552 U.S. at 107. The downward variance of 40 months was minuscule. Vasquez's sentence is still more than twice what Taylor's is.

See *United States v. Newhouse*, 919 F. Supp.2d 955, 967-968 (N.D. Iowa 2013) (imposing a sentence of 96 months because the career offender guidelines resulted in an excessive sentence). See also *United States v. Whigham*, 754 F. Supp.2d 239, 247-48 (D. Mass. 2010) (granting downward variance on a number of grounds and noting that "there is also no question that the career offender guidelines are flawed."); *United States v. Patzer*, 548 F. Supp.2d 612, 617 (N.D. Ill. 2008) (declining to apply career offender guidelines where its application overstated the seriousness of the defendant's prior convictions and was in excess of that required for deterrence); *United States v. Moreland*, 568 F. Supp.2d 674, 688 (S.D. W. Va. 2008) (granting variance from career offender guideline because it resulted in unwarranted sentencing disparity); *United States v. Fernandez*, 436 F.

Supp.2d 983, 988-90 (E.D. Wisc. 2006) (declining to apply career

offender guideline because, based on defendant's specific circumstances,

it produced a guidelines range greater than necessary to satisfy the

purposes of sentencing).

### E.   The 320 months sentence is substantively unreasonable

If Vasquez were not a career offender, the guidelines for level

34 and category IV, were 210 to 262 months, or about 17 to 21 years.  A

sentence of 320 months is 26 and a half years.  The court's variance

from the low end of the career offender guidelines of 360 months was

only 40 months, or a little more than 3 years.  This was a paltry and

insignificant recognition of Vasquez's rehabilitation efforts.

The Sentencing Commission has recognized that the career

offender guidelines for prior drug offenses is not a good measure of

recidivism risk.

> The question for policymakers is whether the career
> offender guideline, especially as it applies to repeat drug traffickers,
> clearly promotes an important purpose of sentencing. Unlike
> repeat violent offenders, whose incapacitation may protect
> the public from additional crimes by the offender,
> criminologists and law enforcement officials testifying before
> the Commission have noted that retail-level drug traffickers

24

are readily replaced by new drug sellers so long as the
demand for a drug remains high. . . .

Most importantly, preliminary analysis of the recidivism
rates of drug trafficking offenders sentenced under the career
offender guideline based on prior drug convictions shows that
their rates are much lower than other offenders who are
assigned to criminal history category VI. The overall rate of
recidivism for category VI offenders two years after release
from prison is 55 percent (USSC, 2004). The rate for
offenders qualifying for the career criminal guideline based
on one or more violent offenses is about 52 percent. But the
rate for offenders qualifying only on the basis of prior drug
offenses is only 27 percent. The recidivism rate for career
offenders more closely resembles the rates for offenders in
the lower criminal history categories in which they would be
placed under the normal criminal history scoring rules in
Chapter Four of the Guidelines Manual. The career offender
guideline thus makes the criminal history category a less
perfect measure of recidivism risk than it would be without
the inclusion of offenders qualifying only because of prior
drug offenses.

U.S. Sentencing Comm'n, Fifteen Years of Guidelines Sentencing, An

Assessment of How Well the Federal Criminal Justice System is

Achieving the Goals of Sentencing Reform 134 (2004) (emphasis in

original).

See *United States v. Pruitt*, 502 F.3d 1154, 1167-68 (10th Cir.

2007) (McConnell, J., concurring) (noting that the Sentencing

Commission criticized "the sweep" of the Career Offender guideline in its Fifteen Year Report.)

The Supreme Court has held that it is not an abuse of discretion to vary from the guidelines based on policy disagreements. *Kimbrough*, 552 U.S. at 110-111. A sentence in the range of 210-262 months would have been "sufficient, but not greater than necessary, to comply with" 18 U.S.C. § 3553(a)(2). Insofar as the court believed it needed to look at the broader picture, given Vasquez's unquestionable rehabilitation, a sentence of 210-262 months per his guideline range (without the career offender), would have been more than adequate to: (1) reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (2) afford adequate deterrence to criminal conduct; and, (3) protect the public from further crimes of the defendant.

A sentence between 210 and 262 months is still a hefty one but would enable Vasquez to continue with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. § 3553(a)(2).

The 320 months sentence in light of Vasquez's impressive rehabilitation is substantively unreasonable.

## CONCLUSION

For the foregoing reasons, Joseph Vasquez's sentence must be vacated and remanded.

Date: December 31, 2020    Respectfully submitted,

/s/ verna wefald

VERNA WEFALD

Attorney for Joseph Vasquez

## CERTIFICATE OF RELATED CASES

Pursuant to Ninth Circuit Rule 28-2.6, counsel certifies that she is unaware of any other cases related to this one.

Date: December 31, 2020    Respectfully submitted,

/s/    Verna Wefald

VERNA WEFALD

Attorney for Joseph Vasquez

## CERTIFICATE OF COMPLIANCE

Pursuant to Ninth Circuit Rule 32(e)(4), I certify that the opening brief is proportionately spaced, has a typeface of 14 points or more, and contains 4,768 words.

Date: December 31, 2020    Respectfully submitted,

/s/ Verna Wefald

VERNA WEFALD

Attorney for Joseph Vasquez

# ADDENDUM

# INDEX

1.  Guideline § 4B1.1 (career offender) . . . . . . . . . . . . . . . . . . . . . . . 1

2.  Guideline § 4B1.2 (definition of terms, career offender) . . . . . . . 6

3.  18 U.S.C. § 3553 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

### *18 USCS Appx § 4B1.1*

Current through Public Law 116-246, approved December 22, 2020.

*United States Code Service  >  TITLE 18. CRIMES AND CRIMINAL PROCEDURE (§§ 1 — 6005)  >  18 USCS appendix  >  SENTENCING GUIDELINES FOR THE UNITED STATES COURTS  >  CHAPTER FOUR. Criminal History and Criminal Livelihood  >  Part B. Career Offenders and Criminal Livelihood*

## § *4B1.1. Career Offender*

**(a)** A defendant is a ***career offender*** if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

**(b)**

Except as provided in subsection (c), if the offense level for a ***career offender*** from the table in this subsection is greater than the offense level otherwise applicable, the offense level from the table in this subsection shall apply. A ***career offender***'s criminal history category in every case under this subsection shall be Category VI.

| Offense Statutory Maximum | Offense Level * |
|---|---|
| (1) Life ..................... | 37 |
| (2) 25 years or more ..................... | 34 |
| (3) 20 years or more, but less than 25 years ..................... | 32 |
| (4) 15 years or more, but less than 20 years ..................... | 29 |
| (5) 10 years or more, but less than 15 years ..................... | 24 |
| (6) 5 years or more, but less than 10 years ..................... | 17 |
| (7) More than 1 year, but less than 5 years ..................... | 12. |

*If an adjustment from § 3E1.1 (Acceptance of Responsibility) applies, decrease the offense level by the number of levels corresponding to that adjustment.

**(c)** If the defendant is convicted of *18 U.S.C. § 924(c)* or *§ 929(a)*, and the defendant is determined to be a ***career offender*** under subsection (a), the applicable guideline range shall be determined as follows:

**(1)**If the only count of conviction is _18 U.S.C. § 924(c)_ or _§ 929(a)_, the applicable guideline range shall be determined using the table in subsection (c)(3).

**(2)**In the case of multiple counts of conviction in which at least one of the counts is a conviction other than a conviction for _18 U.S.C. § 924(c)_ or _§ 929(a)_, the guideline range shall be the greater of—

    **(A)**the guideline range that results by adding the mandatory minimum consecutive penalty required by the _18 U.S.C. § 924(c)_ or _§ 929(a)_ count(s) to the minimum and the maximum of the otherwise applicable guideline range determined for the count(s) of conviction other than the _18 U.S.C. § 924(c)_ or _§ 929(a)_ count(s); and

    **(B)**the guideline range determined using the table in subsection (c)(3).

**(3)**_**Career Offender**_ Table for _18 U.S.C. § 924(c)_ or _§ 929(a)_ Offenders

| § 3E1.1 Reduction | Guideline Range for the 18 U.S.C. § 924(c) or § 929(a) Count(s) |
|---|---|
| No reduction | 360–life |
| 2-level reduction | 292–365 |
| 3-level reduction | 262–327. |

Commentary

_Application Notes:_

**1.**Definitions. "Crime of violence," "controlled substance offense," and "two prior felony convictions" are defined in § 4B1.2.

**2.**"Offense Statutory Maximum". "Offense Statutory Maximum," for the purposes of this guideline, refers to the maximum term of imprisonment authorized for the offense of conviction that is a crime of violence or controlled substance offense, including any increase in that maximum term under a sentencing enhancement provision that applies because of the defendant's prior criminal record (such sentencing enhancement provisions are contained, for example, in _21 U.S.C. § 841(b)(1)(A)_, (B), (C), and (D)). For example, in a case in which the statutory maximum term of imprisonment under _21 U.S.C. § 841(b)(1)(C)_ is increased from twenty years to thirty years because the defendant has one or more qualifying prior drug convictions, the "Offense Statutory Maximum" for that defendant for the purposes of this guideline is thirty years and not twenty years. If more than one count of conviction is of a crime of violence or controlled substance offense, use the maximum authorized term of imprisonment for the count that has the greatest offense statutory maximum.

**3.**Application of Subsection (c).

**(A)**In General. Subsection (c) applies in any case in which the defendant (i) was convicted of violating *18 U.S.C. § 924(c)* or *§ 929(a)*; and (ii) as a result of that conviction (alone or in addition to another offense of conviction), is determined to be a ***career offender*** under § ***4B1.1***(a).

**(B)**Subsection (c)(2). To determine the greater guideline range under subsection (c)(2), the court shall use the guideline range with the highest minimum term of imprisonment.

**(C)**"Otherwise Applicable Guideline Range". For purposes of subsection (c)(2)(A), "otherwise applicable guideline range" for the count(s) of conviction other than the *18 U.S.C. § 924(c)* or *18 U.S.C. § 929(a)* count(s) is determined as follows:

> **(i)**If the count(s) of conviction other than the *18 U.S.C. § 924(c)* or *18 U.S.C. § 929(a)* count(s) does not qualify the defendant as a ***career offender***, the otherwise applicable guideline range for that count(s) is the guideline range determined using: (I) the Chapter Two and Three offense level for that count(s); and (II) the appropriate criminal history category determined under §§ 4A1.1 (Criminal History Category) and 4A1.2 (Definitions and Instructions for Computing Criminal History).

> **(ii)**If the count(s) of conviction other than the *18 U.S.C. § 924(c)* or *18 U.S.C. § 929(a)* count(s) qualifies the defendant as a ***career offender***, the otherwise applicable guideline range for that count(s) is the guideline range determined for that count(s) under § ***4B1.1***(a) and (b).

**(D)**Imposition of Consecutive Term of Imprisonment. In a case involving multiple counts, the sentence shall be imposed according to the rules in subsection (e) of § 5G1.2 (Sentencing on Multiple Counts of Conviction).

**(E)**Example. The following example illustrates the application of subsection (c)(2) in a multiple count situation:

The defendant is convicted of one count of violating *18 U.S.C. § 924(c)* for possessing a firearm in furtherance of a drug trafficking offense (5 year mandatory minimum), and one count of violating *21 U.S.C. § 841(b)(1)(B)* (5 year mandatory minimum, 40 year statutory maximum). Applying subsection (c)(2)(A), the court determines that the drug count (without regard to the *18 U.S.C. § 924(c)* count) qualifies the defendant as a ***career offender*** under § ***4B1.1***(a). Under § ***4B1.1***(a), the otherwise applicable guideline range for the drug count is 188–235 months (using offense level 34 (because the statutory maximum for the drug count is 40 years), minus 3 levels for acceptance of responsibility, and criminal history category VI). The court adds 60 months (the minimum required by *18 U.S.C. § 924(c)*) to the minimum and the maximum of

that range, resulting in a guideline range of 248–295 months. Applying subsection (c)(2)(B), the court then determines the *__career offender__* guideline range from the table in subsection (c)(3) is 262–327 months. The range with the greatest minimum, 262–327 months, is used to impose the sentence in accordance with § 5G1.2(e).

**4.** Departure Provision for State Misdemeanors. In a case in which one or both of the defendant's "two prior felony convictions" is based on an offense that was classified as a misdemeanor at the time of sentencing for the instant federal offense, application of the *__career offender__* guideline may result in a guideline range that substantially overrepresents the seriousness of the defendant's criminal history or substantially overstates the seriousness of the instant offense. In such a case, a downward departure may be warranted without regard to the limitation in § 4A1.3(b)(3)(A).

*Background:* Section 994(h) of Title 28, United States Code, mandates that the Commission assure that certain "*__career__" offenders* receive a sentence of imprisonment "at or near the maximum term authorized." Section *__4B1__.1* implements this directive, with the definition of a *__career offender__* tracking in large part the criteria set forth in *28 U.S.C. § 994(h)*. However, in accord with its general guideline promulgation authority under *28 U.S.C. § 994(a)*–(f), and its amendment authority under *28 U.S.C. § 994(o)* and (p), the Commission has modified this definition in several respects to focus more precisely on the class of recidivist offenders for whom a lengthy term of imprisonment is appropriate and to avoid "unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar criminal conduct  . . ." *28 U.S.C. § 991(b)(1)(B)*. The Commission's refinement of this definition over time is consistent with Congress's choice of a directive to the Commission rather than a mandatory minimum sentencing statute ("The [Senate Judiciary] Committee believes that such a directive to the Commission will be more effective; the guidelines development process can assure consistent and rational implementation for the Committee's view that substantial prison terms should be imposed on repeat violent offenders and repeat drug traffickers." S. Rep. No. 225, 98th Cong., 1st Sess. 175 (1983)).

Subsection (c) provides rules for determining the sentence for *__career offenders__* who have been convicted of *18 U.S.C. § 924(c)* or *§ 929(a)*. The *__Career Offender__* Table in subsection (c)(3) provides a sentence at or near the statutory maximum for these offenders by using guideline ranges that correspond to criminal history category VI and offense level 37 (assuming § 3E.1.1 (Acceptance of Responsibility) does not apply), offense level 35 (assuming a 2-level reduction under § 3E.1.1 applies), and offense level 34 (assuming a 3-level reduction under § 3E1.1 applies).

## History

## HISTORY:

Effective November 1, 1987. Amended effective January 15, 1988 (see Appendix C, amendments 47 and 48); November 1, 1989 (see Appendix C, amendments 266 and 267); November 1, 1992 (see Appendix C, amendment 459); November 1, 1994 (see Appendix C, amendment 506); November 1, 1995 (see Appendix C, amendment 528); November 1, 1997 (see Appendix C, amendments 546, 567); November 1, 2002 (see Appendix C, amendment 642); November 1, 2011 (see Appendix C, amendment 758); August 1, 2016 (see Appendix C, amendment 798).

Annotations

## NOTES TO DECISIONS

**I. IN GENERAL**

**1. Constitutional issues**

**2. Applicability**

**3. Relationship with other provisions**

**4. —Acceptance of responsibility**

**5. —Double punishment or enhancement**

**6. Controlled substance offense**

**7. —State conviction**

**8. Departure from guidelines**

**9. —Grounds for downward departure**

**10. —Upward departure in absence of _career offender_ status**

**11. Evidence**

**II. CRIME OF VIOLENCE**

**12. Generally**

**13. Burglary**

*18 USCS Appx § 4B1.2*

Current through Public Law 116-246, approved December 22, 2020.

*United States Code Service > TITLE 18. CRIMES AND CRIMINAL PROCEDURE (§§ 1 — 6005) > 18 USCS appendix > SENTENCING GUIDELINES FOR THE UNITED STATES COURTS > CHAPTER FOUR. Criminal History and Criminal Livelihood > Part B. Career Offenders and Criminal Livelihood*

## § 4B1.2. Definitions of Terms Used in Section *4B1.1*

(**a**)The term "crime of violence" means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—

> (**1**)has as an element the use, attempted use, or threatened use of physical force against the person of another, or

> (**2**)is murder, voluntary manslaughter, kidnapping, aggravated assault, a forcible sex offense, robbery, arson, extortion, or the use or unlawful possession of a firearm described in *26 U.S.C. § 5845(a)* or explosive material as defined in *18 U.S.C. § 841(c)*.

(**b**)The term "controlled substance offense" means an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

(**c**)The term "two prior felony convictions" means (1) the defendant committed the instant offense of conviction subsequent to sustaining at least two felony convictions of either a crime of violence or a controlled substance offense (i.e., two felony convictions of a crime of violence, two felony convictions of a controlled substance offense, or one felony conviction of a crime of violence and one felony conviction of a controlled substance offense), and (2) the sentences for at least two of the aforementioned felony convictions are counted separately under the provisions of § 4A1.1(a), (b), or (c). The date that a defendant sustained a conviction shall be the date that the guilt of the defendant has been established, whether by guilty plea, trial, or plea of nolo contendere.

Commentary

*Application Notes:*

**1.**Definitions. For purposes of this guideline—

"Crime of violence" and "controlled substance offense" include the offenses of aiding and abetting, conspiring, and attempting to commit such offenses.

"Forcible sex offense" includes where consent to the conduct is not given or is not legally valid, such as where consent to the conduct is involuntary, incompetent, or coerced. The offenses of sexual abuse of a minor and statutory rape are included only if the sexual abuse of a minor or statutory rape was (A) an offense described in *18 U.S.C. § 2241(c)* or (B) an offense under state law that would have been an offense under section 2241(c) if the offense had occurred within the special maritime and territorial jurisdiction of the United States.

"Extortion" is obtaining something of value from another by the wrongful use of (A) force, (B) fear of physical injury, or (C) threat of physical injury.

Unlawfully possessing a listed chemical with intent to manufacture a controlled substance (*21 U.S.C. § 841(c)(1)*) is a "controlled substance offense."

Unlawfully possessing a prohibited flask or equipment with intent to manufacture a controlled substance (*21 U.S.C. § 843(a)(6)*) is a "controlled substance offense."

Maintaining any place for the purpose of facilitating a drug offense (*21 U.S.C. § 856*) is a "controlled substance offense" if the offense of conviction established that the underlying offense (the offense facilitated) was a "controlled substance offense."

Using a communications facility in committing, causing, or facilitating a drug offense (*21 U.S.C. § 843(b)*) is a "controlled substance offense" if the offense of conviction established that the underlying offense (the offense committed, caused, or facilitated) was a "controlled substance offense."

A violation of *18 U.S.C. § 924(c)* or *§ 929(a)* is a "crime of violence" or a "controlled substance offense" if the offense of conviction established that the underlying offense was a "crime of violence" or a "controlled substance offense". (Note that in the case of a prior *18 U.S.C. § 924(c)* or *§ 929(a)* conviction, if the defendant also was convicted of the underlying offense, the sentences for the two prior convictions will be treated as a single sentence under § 4A1.2 (Definitions and Instructions for Computing Criminal History).)

"Prior felony conviction" means a prior adult federal or state conviction for an offense punishable by death or imprisonment for a term exceeding one year, regardless of whether such offense is specifically designated as a felony and regardless of the actual sentence imposed. A conviction for an offense committed at age eighteen or older is an adult conviction. A conviction for an offense committed prior to age eighteen is an adult conviction if it is classified as an adult conviction under the laws of the jurisdiction in which the defendant was convicted (e.g., a federal conviction for an offense committed prior to the defendant's eighteenth birthday is an adult conviction if the defendant was expressly proceeded against as an adult).

**2.** Offense of Conviction as Focus of Inquiry. Section *4B1*.*1* (***Career Offender***) expressly provides that the instant and prior offenses must be crimes of violence or controlled substance offenses of which the defendant was convicted. Therefore, in determining whether an offense is a crime of violence or controlled substance for the purposes of § *4B1*.*1* (***Career Offender***), the offense of conviction (i.e., the conduct of which the defendant was convicted) is the focus of inquiry.

**3.** Applicability of § 4A1.2. The provisions of § 4A1.2 (Definitions and Instructions for Computing Criminal History) are applicable to the counting of convictions under § *4B1*.*1*.

**4.** Upward Departure for Burglary Involving Violence. There may be cases in which a burglary involves violence, but does not qualify as a "crime of violence" as defined in § 4B1.2(a) and, as a result, the defendant does not receive a higher offense level or higher Criminal History Category that would have applied if the burglary qualified as a "crime of violence." In such a case, an upward departure may be appropriate.

## History

**HISTORY:**

Effective November 1, 1987. Amended effective January 15, 1988 (see Appendix C, amendment 49); November 1, 1989 (see Appendix C, amendment 268); November 1, 1991 (see Appendix C, amendment 433); November 1, 1992 (see Appendix C, amendment 461); November 1, 1995 (see Appendix C, amendment 528); November 1, 1997 (see Appendix C, amendments 546, 568); November 1, 2000 (see Appendix C, amendment 600); November 1, 2002 (see Appendix C, amendments 642 and 646); November 1, 2004 (see Appendix C, amendment 674); November 1, 2007 (see Appendix C, amendment 709); November 1, 2009 (see Appendix C, amendment 736); November 1, 2015 (see Appendix C, amendment 795); August 1, 2016 (see Appendix C, amendment 798).

Annotations

## NOTES TO DECISIONS

### I. CRIME OF VIOLENCE

**1. Generally**

**2. Assaults and batteries**

*18 USCS § 3553, Part 1 of 4*

Current through Public Law 116-246, approved December 22, 2020.

*United States Code Service > TITLE 18. CRIMES AND CRIMINAL PROCEDURE (§§ 1 — 6005) > Part II. Criminal Procedure (Chs. 201 — 238) > CHAPTER 227. Sentences (Subchs. A — D) > Subchapter A. General Provisions (§§ 3551 — 3559)*

## § 3553. Imposition of a sentence

**(a) Factors to be considered in imposing a sentence.** The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—

**(1)** the nature and circumstances of the offense and the history and characteristics of the defendant;

**(2)** the need for the sentence imposed—

**(A)** to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

**(B)** to afford adequate deterrence to criminal conduct;

**(C)** to protect the public from further crimes of the defendant; and

**(D)** to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

**(3)** the kinds of sentences available;

**(4)** the kinds of sentence and the sentencing range established for—

**(A)** the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—

**(i)** issued by the Sentencing Commission pursuant to *section 994(a)(1) of title 28, United States Code*, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

**(ii)** that, except as provided in section 3742(g) [*18 USCS § 3742(g)*], are in effect on the date the defendant is sentenced; or

**(B)** in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission

pursuant to *section 994(a)(3) of title 28, United States Code*, taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28;

**(5)**any pertinent policy statement—

**(A)**issued by the Sentencing Commission pursuant to *section 994(a)(2) of title 28, United States Code*, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

**(B)**that, except as provided in section 3742(g) [*18 USCS § 3742(g)*], is in effect on the date the defendant is sentenced.[;]

**(6)**the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

**(7)**the need to provide restitution to any victims of the offense.

**(b) Application of guidelines in imposing a sentence.**

**(1)**In general [*Caution: In United States v. Booker (2005) 543 US 220, 160 L Ed 2d 621, 125 S Ct 738*, **the Supreme Court held that** *18 USCS § 3553(b)(1)***, which makes the Federal Sentencing Guidelines mandatory, is incompatible with the requirements of the Sixth Amendment and therefore must be severed and excised from the Sentencing Reform Act of 1984.**]. Except as provided in paragraph (2), the court shall impose a sentence of the kind, and within the range, referred to in subsection (a)(4) unless the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described. In determining whether a circumstance was adequately taken into consideration, the court shall consider only the sentencing guidelines, policy statements, and official commentary of the Sentencing Commission. In the absence of an applicable sentencing guideline, the court shall impose an appropriate sentence, having due regard for the purposes set forth in subsection (a)(2). In the absence of an applicable sentencing guideline in the case of an offense other than a petty offense, the court shall also have due regard for the relationship of the sentence imposed to sentences prescribed by guidelines applicable to similar offenses and offenders, and to the applicable policy statements of the Sentencing Commission.

**(2)**Child crimes and sexual offenses.

**[(A)]**Sentencing. In sentencing a defendant convicted of an offense under section 1201 [*18 USCS § 1201*] involving a minor victim, an offense under section 1591 [*18 USCS § 1591*], or an offense under chapter 71, 109A, 110, or 117 [*18 USCS §§ 1460* et seq., *2241* et seq., *2251* et seq., or *2421* et seq.], the court shall impose a sentence of the kind, and within the range, referred to in subsection (a)(4) unless—

**(i)**the court finds that there exists an aggravating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence greater than that described;

**(ii)**the court finds that there exists a mitigating circumstance of a kind or to a degree, that—

**(I)**has been affirmatively and specifically identified as a permissible ground of downward departure in the sentencing guidelines or policy statements issued under section 994(a) of title 28, taking account of any amendments to such sentencing guidelines or policy statements by Congress;

**(II)**has not been taken into consideration by the Sentencing Commission in formulating the guidelines; and

**(III)**should result in a sentence different from that described; or

**(iii)**the court finds, on motion of the Government, that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense and that this assistance established a mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence lower than that described.

In determining whether a circumstance was adequately taken into consideration, the court shall consider only the sentencing guidelines, policy statements, and official commentary of the Sentencing Commission, together with any amendments thereto by act of Congress. In the absence of an applicable sentencing guideline, the court shall impose an appropriate sentence, having due regard for the purposes set forth in subsection (a)(2). In the absence of an applicable sentencing guideline in the case of an offense other than a petty offense, the court shall also have due regard for the relationship of the sentence imposed to sentences prescribed by guidelines

applicable to similar offenses and offenders, and to the applicable policy statements of the Sentencing Commission, together with any amendments to such guidelines or policy statements by act of Congress.

**(c) Statement of reasons for imposing a sentence.** The court, at the time of sentencing, shall state in open court the reasons for its imposition of the particular sentence, and, if the sentence—

> **(1)** is of the kind, and within the range, described in subsection (a)(4), and that range exceeds 24 months, the reason for imposing a sentence at a particular point within the range; or

> **(2)** is not of the kind, or is outside the range, described in subsection (a)(4), the specific reason for the imposition of a sentence different from that described, which reasons must also be stated with specificity in a statement of reasons form issued under section 994(w)(1)(B) of title 28 [*28 USCS § 994(w)(1)(B)*], except to the extent that the court relies upon statements received in camera in accordance with *Federal Rule of Criminal Procedure 32*. In the event that the court relies upon statements received in camera in accordance with *Federal Rule of Criminal Procedure 32* the court shall state that such statements were so received and that it relied upon the content of such statements.

If the court does not order restitution, or orders only partial restitution, the court shall include in the statement the reason therefor. The court shall provide a transcription or other appropriate public record of the court's statement of reasons, together with the order of judgment and commitment, to the Probation System and to the Sentencing Commission,[,] and, if the sentence includes a term of imprisonment, to the Bureau of Prisons.

**(d) Presentence procedure for an order of notice.** Prior to imposing an order of notice pursuant to section 3555 [*18 USCS § 3555*], the court shall give notice to the defendant and the Government that it is considering imposing such an order. Upon motion of the defendant or the Government, or on its own motion, the court shall—

> **(1)** permit the defendant and the Government to submit affidavits and written memoranda addressing matters relevant to the imposition of such an order;

> **(2)** afford counsel an opportunity in open court to address orally the appropriateness of the imposition of such an order; and

> **(3)** include in its statement of reasons pursuant to subsection (c) specific reasons underlying its determinations regarding the nature of such an order.

Upon motion of the defendant or the Government, or on its own motion, the court may in its discretion employ any additional procedures that it concludes will not unduly complicate or prolong the sentencing process.

**(e) Limited authority to impose a sentence below a statutory minimum.** Upon motion of the Government, the court shall have the authority to impose a sentence below a level established by statute as a minimum sentence so as to reflect a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense. Such sentence shall be imposed in accordance with the guidelines and policy statements issued by the Sentencing Commission pursuant to *section 994 of title 28, United States Code*.

**(f) Limitation on applicability of statutory minimums in certain cases.** Notwithstanding any other provision of law, in the case of an offense under section 401, 404, or 406 of the Controlled Substances Act (*21 U.S.C. 841*, *844*, *846*), section 1010 or 1013 of the Controlled Substances Import and Export Act (*21 U.S.C. 960*, *963*), or section 70503 or 70506 of title 46, the court shall impose a sentence pursuant to guidelines promulgated by the United States Sentencing Commission under section 994 of title 28 without regard to any statutory minimum sentence, if the court finds at sentencing, after the Government has been afforded the opportunity to make a recommendation, that—

(**1**)the defendant does not have—

(**A**)more than 4 criminal history points, excluding any criminal history points resulting from a 1-point offense, as determined under the sentencing guidelines;

(**B**)a prior 3-point offense, as determined under the sentencing guidelines; and

(**C**)a prior 2-point violent offense, as determined under the sentencing guidelines;

Information disclosed by a defendant under this subsection may not be used to enhance the sentence of the defendant unless the information relates to a violent offense.

(**2**)the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;

(**3**)the offense did not result in death or serious bodily injury to any person;

(**4**)the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in section 408 of the Controlled Substances Act [*21 USCS § 848*]; and

(**5**)not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct

or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

**(g) Definition of violent offense.** As used in this section, the term "violent offense" means a crime of violence, as defined in section 16 [*18 USCS § 16*], that is punishable by imprisonment.

## History

**HISTORY:**

Added Oct. 12, 1984, *P. L. 98-473*, Title II, Ch II, § 212(a)(2), *98 Stat. 1989*; Oct. 27, 1986, *P. L. 99-570*, Title I, Subtitle A, § 1007(a), *100 Stat. 3207*-7; Nov. 10, 1986, *P. L. 99-646*, §§ 8(a), 9(a), 80(a), 81(a), *100 Stat. 3593*, 3619; Dec. 7, 1987, *P. L. 100-182*, §§ 3, 16(a), 17, *101 Stat. 1266*, 1269, 1270; Nov. 18, 1988, *P. L. 100-690*, Title VII, Subtitle C, § 7102, *102 Stat. 4416*; Sept. 13, 1994, *P. L. 103-322*, Title VIII, § 80001(a), Title XXVIII, § 280001, 108 Stat. 1985, 2095; Oct. 11, 1996, *P. L. 104-294*, Title VI, § 601(b)(5), (6), (h), *110 Stat. 3499*, 3500; Nov. 2, 2002, *P. L. 107-273*, Div B, Title IV, § 4002(a)(8), *116 Stat. 1807*; April 30, 2003, *P. L. 108-21*, Title IV, § 401(a), (c), (j)(5), *117 Stat. 667*, 669, 673; May 27, 2010, *P. L. 111-174*, § 4, *124 Stat. 1216*; Dec. 21, 2018, *P.L. 115-391*, Title IV, § 402(a), *132 Stat. 5221*.

Annotations

## Notes

**HISTORY; ANCILLARY LAWS AND DIRECTIVES**

**Explanatory notes:**

**Effective date of section:**

**Amendment Notes**

**1986.**

**1987.**

**1988.**